## MARVIN J. TAYLOR *v.* ELINOR J. TAYLOR
### (AC 29590)

Gruendel, Alvord and Pellegrino, Js.

Argued April 27—officially released September 22, 2009

*Geraldine Ficarra,* with whom was *Michael Ruben Peck,* for the appellant (defendant).

*Thomas M. Shanley,* for the appellee (plaintiff).

*Opinion*

PELLEGRINO, J. The defendant, Elinor J. Taylor, appeals from the postjudgment order of the trial court granting the motion of the plaintiff, Marvin J. Taylor, for modification of his alimony obligation. On appeal, the defendant claims that the court improperly (1) interpreted the "second look" aspect of the alimony provision in the separation agreement as a de novo postjudgment review and (2) reduced her alimony in contravention of the principles of trust law and considered the trust's income or appreciation in deciding the plaintiff's motion for modification.[1] We reverse the judgment of the trial court.

The court, *Hiller, J.*, dissolved the parties' forty year marriage on April 14, 2002. The judgment of dissolution incorporated by reference the parties' separation agreement, which contained provisions setting forth the plaintiff's alimony obligation and the time at which his obligation could be modified. The plaintiff was required to pay the defendant $5000 per month as alimony, but on the plaintiff's sixty-fifth birthday or the death of the defendant's father, whichever occurred first, the alimony would then be subject to a second look by the court to determine "the then appropriate order." Since the date of the judgment of dissolution, the plaintiff has become sixty-five and the defendant's father has died. On May 22, 2006, the plaintiff filed a motion for modification and in March, 2007, the court, *Dolan, J.*, temporarily reduced the plaintiff's alimony obligation to $2500, effective April 1, 2007. The hearing was not concluded before Judge Dolan, and, with the agreement of the parties, the court, *Pinkus, J.*, ordered a mistrial and commenced a new hearing on October 3, 2007. It was concluded on November 26, 2007.

---

[1] On appeal, the defendant also claims that the court abused its discretion in making its order for modification retroactive to the date of the service of the motion for modification. Because we reverse the court's judgment with regard to the alimony modification, we do not address this claim.

In its memorandum of decision, the court, *Pinkus, J.*, found that the terms of the judgment of dissolution did not require a finding of a substantial change in circumstances by the court to determine a modification of alimony. The court also found that the defendant was an income beneficiary of the Elinor J. Taylor Generation Skipping Trust (trust) in which the settlor's primary intent was to provide generously for the defendant's care and maintenance. The court found that the trust earns more than enough income to provide for the care and maintenance of the defendant without any invasion of the principal. The court, therefore, granted the plaintiff's motion for modification and modified the defendant's alimony to $1 per year, retroactive to the date the motion was served. This appeal followed.

I

On appeal, the defendant first claims that the court improperly interpreted the language "second look" in the alimony provision in the separation agreement as requiring de novo review rather than a preliminary determination by the court that there had been a substantial change in circumstances that required modification. Specifically, the defendant argues that because the language of the separation agreement did not incorporate the actual words "de novo," the court was required first to conduct a substantial change of circumstances inquiry. We disagree with the defendant, and agree with the court that the terms of the separation agreement, incorporated into the judgment of dissolution, do not require the finding of a substantial change of circumstances.

We begin with our standard of review. "In a marriage dissolution action, an agreement of the parties executed at the time of the dissolution and incorporated into the judgment is a contract of the parties. . . . The construction of a contract to ascertain the intent of the

parties presents a question of law when the contract or agreement is unambiguous within the four corners of the instrument. . . . The scope of review in such cases is plenary. . . ."[2]

"When a modification of alimony is requested on the basis of the separation agreement, the court must look to the agreement. Separation agreements incorporated by reference into dissolution judgments are to be interpreted consistently with accepted principles governing contracts." (Citation omitted; internal quotation marks omitted.) *Cushman* v. *Cushman*, 93 Conn. App. 186, 190–91, 888 A.2d 156 (2006).

The separation agreement, which was incorporated into the judgment of dissolution stated: "Commencing on September 1, 2002, the [plaintiff] shall pay alimony during his lifetime, to the [defendant], until her death, remarriage, cohabitation pursuant to [General Statutes § ] 46b-86, whichever shall occur first for her support and maintenance, the amount of $60,000 per year, payable at the rate of $5,000 per month on the 1st of each and every month in advance. Said amount shall be modifiable by either party. Upon the [plaintiff's] 65th birthday or the death of the [defendant's] father, whichever shall first occur, the alimony shall be subject to a second-look by the Superior Court for the State of Connecticut to determine the then appropriate order, if any."

The defendant claims that because the agreement failed to include language that after the events mentioned, alimony would be subject to a de novo review, the second look should be based on a substantial change of circumstances. See, e.g., *Borkowski* v. *Borkowski*,

---

[2] The defendant claims that the standard of review should be plain error because the court overlooked controlling case law. The standard of review is well settled, however, for both construction of a contract; *Cushman* v. *Cushman*, 93 Conn. App. 186, 190–91, 888 A.2d 156 (2006) (plenary review); and modification of alimony; *Blum* v. *Blum*, 109 Conn. App. 316, 328, 951 A.2d 587 (abuse of discretion), cert. denied, 289 Conn. 929, 958 A.2d 157 (2008).

228 Conn. 729, 638 A.2d 1060 (1994). We agree with the court that the language of the separation agreement permitted the court to take a fresh look at the parties' financial circumstances either after the plaintiff reached his sixty-fifth birthday or after the death of the defendant's father. If that was not the intent of the parties, the second look language would have been superfluous because the agreement provided that alimony could be modified at any time if a substantial change of circumstances occurred. The agreement, however, specifically provides that on the happening of either of the two previously mentioned events, alimony may be given a second look. We conclude, therefore, that this language permits a de novo review of the plaintiff's alimony obligation.

In addition, the defendant claims that both of the events that trigger the second look at the alimony order—the plaintiff's becoming sixty-five or the death of the defendant's father—relate to a change of circumstance, and, therefore require a change of circumstance inquiry. We disagree.

In *Hardisty* v. *Hardisty*, 183 Conn. 253, 258–59, 439 A.2d 307 (1981), our Supreme Court articulated a two part test to modify alimony; first, the court has to find a substantial change in the financial circumstances of one of the parties and then determine whether modification is warranted. In *Borkowski* v. *Borkowski*, supra, 228 Conn. 729, our Supreme Court further articulated that the bifurcated inquiry of the trial court is not two completely separate inquiries but that modification can be entertained on a showing of a "substantial change in the circumstances of either party to the original dissolution decree. . . . Thus, once the trial court finds a substantial change in circumstances, it can properly consider a motion for modification of alimony." (Citation omitted.) Id., 737. Here, by the terms of the separation agreement, the parties had already agreed on

events that would constitute a substantial change. The parties agreed that once the plaintiff became sixty-five or the defendant's father died, those circumstances in and of themselves would trigger a second look at the alimony order. We conclude, therefore, that the court correctly determined that it did not need to find a substantial change of circumstances and properly conducted a de novo review.

II

The defendant next argues that the court improperly crafted an order that tacitly compelled the trustees of the trust to make distributions to the defendant, which was an abuse of its discretion. We agree.

Our inquiry is whether the court properly applied the statutory factors outlined in General Statutes § 46b-82. See *Ucci* v. *Ucci*, 114 Conn. App. 256, 260 n.3, 969 A.2d 217 (2009). Because the court has broad discretion in determining the applicability of the factors delineated in § 46b-82, we must determine if the court abused its discretion in modifying the plaintiff's alimony obligation. See *Borkowski* v. *Borkowski*, supra, 228 Conn. 739. "An appellate court will not disturb a trial court's orders in domestic relations cases unless the court has abused its discretion or it is found that it could not reasonably conclude as it did, based on the facts presented. . . . It is within the province of the trial court to find facts and draw proper inferences from the evidence presented. . . . In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action. . . . [T]o conclude that the trial court abused its discretion, we must find that the court either incorrectly applied the law or could not reasonably conclude as it did. . . . Appellate review of a trial court's findings of fact is governed by

the clearly erroneous standard of review. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Moreira* v. *Moreira*, 105 Conn. App. 637, 640, 938 A.2d 1289 (2008). In addition, "[t]he issue of intent as it relates to the interpretation of a trust instrument . . . is to be determined by examination of the language of the trust instrument itself and not by extrinsic evidence of actual intent. . . . The construction of a trust instrument presents a question of law to be determined in the light of facts that are found by the trial court or are undisputed or indisputable." (Internal quotation marks omitted.) *Spencer* v. *Spencer*, 71 Conn. App. 475, 482, 802 A.2d 215 (2002).

In the present matter, the court found that the trust earns more than enough income to provide for the care of the defendant and that the primary intent of the settlor of the trust was to provide for her care and maintenance. Accordingly, the court modified the plaintiff's alimony obligation from $60,000 to $1 per year. The defendant argues that the court improperly considered income that she was not receiving and that its order improperly attempted to compel the trustees to make distributions to her, contrary to principles of trust law. We agree.

Article III, § 2, of the trust provides: "[T]he trustees[3] shall pay to or for the benefit of the Settlor's child, Elinor J. Taylor . . . so much of the net income thereof as the Trustees, in their sole discretion, deem advisable for the comfortable maintenance of said child . . . ." "The well-settled rule in this state is that the exercise

[3] The trustees are Elinor J. Taylor and an independent trustee, Martin Bernstein.

of discretion by the trustee of a spendthrift trust is subject to the court's control only to the extent that an abuse has occurred . . . ." *Zeoli* v. *Commissioner of Social Services,* 179 Conn. 83, 89, 425 A.2d 553 (1979). There has been no claim raised that the trustees have abused their discretion in not making any distributions to the defendant. The court improperly interpreted the provisions of the trust agreement when, in effect, it assumed that the trustees were obligated to distribute the income to the defendant, a beneficiary of a supplementary spendthrift trust.

*Zeoli* v. *Commissioner of Social Services,* supra, 179 Conn. 83, is instructive.[4] In that case, a father, the settlor, established a trust account naming his son as the trustee for the settlor's mentally handicapped daughters. Id., 84–85. The trust account provided that the trustee had the absolute and uncontrolled discretion to distribute income to his sisters, the beneficiaries. Id., 90–91. The trust beneficiaries were recipients of title XIX benefits, and the department of social services sought to compel the trustee to pay for their medical assistance benefits from the trust. Id., 88–89. The court held that the trustee could not be compelled to make the payments as required by the department of social services because the trust was a spendthrift trust and the trustee held the discretionary power to distribute income. Id., 92.

In this case, as in *Zeoli,* the court could not, in effect, compel the trustees to make income payments and consider the nonreceived income in modifying the alimony order. Until the defendant receives a distribution from

---

[4] *Zeoli* v. *Commissioner of Social Services,* supra, 179 Conn. 83, has been superseded by statute 42 U.S.C. § 1396, but only to the extent that "Medicaid agencies consider the value of a Medicaid Qualifying Trust when determining eligibility for [Medicaid]." *Viera* v. *State,* Superior Court, judicial district of Hartford-New Britain, Docket No. CV-90-0438151-S (December 10, 1991) (7 C.S.C.R. 130, 132). The reasoning of *Zeoli* is still sound.

the supplementary spendthrift trust, the undistributed income from the trust itself cannot be considered as income to the defendant. "In the case of the typical spendthrift trust under which the beneficiary receives only such sums as the trustee finds to be necessary for his support, we have held that no title in the income passes to him unless and until it is appropriated to him by the trustee, and then only to the amount determined by the trustee." *Bridgeport* v. *Reilly*, 133 Conn. 31, 35–36, 47 A.2d 865 (1946), quoting *Reilly* v. *State*, 119 Conn. 508, 512, 177 A. 528 (1935). We conclude, therefore, that it was an abuse of discretion for the court to consider the undistributed trust assets as income to the defendant when the court considered and applied the factors of § 46b-82 and reduced the plaintiff's alimony obligation to the defendant to $1 per year.

The judgment is reversed and the case is remanded for further proceedings according to law.

In this opinion the other judges concurred.